UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WILLIAM GRAY<br><br>               Plaintiff,<br><br>   v.<br><br>MICHAEL JOHNSON, *et al.*<br><br>               Defendants. | Case No. 1:11-CV-002-BLW<br><br>**INITIAL REVIEW ORDER** |

On January 3, 2011, Plaintiff, an Idaho prisoner, filed his 112-page Complaint. Dkt. 2. The Clerk conditionally filed the Complaint pending the Court's initial review. Plaintiff also seeks permission to proceed in forma pauperis. Since the Complaint was filed, Plaintiff filed an additional 224 pages of materials he would like the Court to review when analyzing his claims. Dkts. 7, 8.

The Court is required to screen prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. 28 U.S.C. §§ 1915(e) and 1915A. The Court must dismiss a complaint or any portion thereof that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A. Having reviewed the record, and otherwise being fully informed, the Court enters the following Order.

**INITIAL REVIEW ORDER- 1**

# REVIEW OF THE COMPLAINT

1. **Plaintiff's Allegations**

In the original Complaint, Plaintiff identified 39 Defendants to this action: Michael Johnson, Kim Spaulding, Hammer, Ame Angelleti, Tyler Nicodemus, Vicki Hansen, Shannon Nickols, A. Clausen, Dwayne Arrol Shed, Ambrose Richardson, Perle, Harris, Phieffer, Carver, Laura Ashford, Travis Watts, Lenoard King, Flemming Greene, Melodee Armfield, Danthforth, Phillip Valdez, Archibald, Daniel Prado, Charlie Leeds, Teresa Carlin, Amy Anderson, Shirley Roane, Kristi Lynch, Siegler, Oleson, Jack Fernandez, Carrick, Kathy Davidson, Paul Delapain, Darrell Stammer, David King, Mechlin, Develbiss, and Wright. Some of the Defendants work for the Idaho Department of Corrections ("IDOC"), others for the Corrections Corporation of America ("CCA").

Plaintiff's allegations begin when he was housed at the Idaho Maximum Security Institution ("IMSI"). The allegations also include events that occurred after Plaintiff was transferred to the Idaho Correctional Center ("ICC") in November 2009 and events that occurred after he was transferred to the Idaho Correctional Institute in Orofino ("ICI-O") in April 2010.

The gravamen of Plaintiff's claim is that he has been treated differently than other inmates in retaliation for his litigation activity. However, the alleged retaliatory conduct does not, on its face, appear to stem from a retaliatory motive. In addition, after reading Plaintiff's allegations thoroughly, the Court does not see any conduct that rises to a constitutional level of concern. Accordingly, the Complaint must be dismissed.

**INITIAL REVIEW ORDER- 2**

The following allegations are a summary of a large portion of Plaintiff's allegations. Plaintiff lists the allegations in a narrative form without tying the allegations to a specific claim against a specific Defendant. Therefore, even if the allegations were consistent with a constitutional claim, the Court cannot determine what claim and against whom.

For example, in February 2009, immediately after Plaintiff mailed a complaint against IDOC in a state 1983 action, Plaintiff alleges he received a disciplinary offense report ("DOR") for having cleaning rags in his cell. The DOR was later dismissed.

In August 2009, prison officials told Plaintiff his cell smelled bad and needed to be cleaned. Plaintiff was sent to the showers, his personal items were placed in the day room, and another inmate cleaned his cell. Afterwards, Plaintiff discovered his radio had been stolen. Plaintiff believes that prison officials told other inmates about the cell cleaning, so Plaintiff would be targeted and subject to attacks.

In September 2009, a prison official took a bird feather from Plaintiff's cell. The bird feather was very special to Plaintiff, because it symbolized his mother, who loved birds. Plaintiff admits that he did not have permission to keep the bird feather in his cell but also claims that it was taken away as an act of retaliation for his litigation activity.

In early October 2009, Plaintiff was told he was going to be moved. He states that he gathered his things in preparation for the move but expressed concern about the move. Plaintiff was issued a DOR for refusing to move, and the DOR was dismissed two weeks later.

**INITIAL REVIEW ORDER- 3**

In late October 2009, Plaintiff participated in an administrative segregation review process to determine whether Plaintiff could live safely on a tier with members of the prison gang, the Aryan Knights. Plaintiff states he wanted to be placed in a tier that provided the programming he needs to be eligible for parole.

On November 4, 2010, Plaintiff was informed that he would be transferred to a newly-opened, closed custody ward at ICC. Plaintiff did not want to move, because he felt that ICC had a reputation for being violent. Nevertheless, he was moved on November 12, 2010 and had to take a bus with at least ten members of the Aryan Knights.

Plaintiff does not explain how the events at ICC were connected to his litigation activity at IDOC. Regardless, while in ICC custody, Plaintiff had several roommates in quick succession. In February 2010, Plaintiff received a DOR for aggravated battery that was dismissed in March and rewritten in April. As a result of the DOR, Plaintiff moved to the segregation unit of ICC. When Plaintiff complained that his life was threatened in the segregation unit, he was placed in the special management unit.

In April 2010, Plaintiff was transferred to ICI-O. Again, Plaintiff does not explain how the initial events at ICC were connected at his litigation activity.

Upon his arrival at ICI-O, Plaintiff was housed in the A-3 unit, the most restrictive unit, for administrative processing. Within a month, Plaintiff was moved to A-1. Plaintiff enjoyed living in A-1, because it was relatively quiet and programming was available. Plaintiff eventually earned his G.E.D.

**INITIAL REVIEW ORDER- 4**

Unfortunately, Plaintiff missed his G.E.D. graduation ceremony, because he was in administrative segregation for a DOR issued in July 2010. While in administrative segregation, Plaintiff filed a habeas corpus action in state court that was dismissed on summary judgment. Plaintiff thinks he was left in A-3 and forced to miss his graduation in September 2010, as an act of retaliation for his litigation activity.

In August 2010, Plaintiff was accused of stealing a radio from his cell mate. His cell was searched at least three times in two days. In addition, Plaintiff was forced to miss recreation one day, because he had been transported much earlier in the day.

In October 2010, Plaintiff sough medical attention for hemorrhoids, and the nature of his medical concerns was announced over the radio. Then, in November 2010, Plaintiff was not supervised at the dentists's office and "inadvertently" took an unauthorized property item.

The above-described allegations are not a comprehensive list but a demonstrative example of the allegations Plaintiff describes in his Complaint and additional supporting documentation. None of these allegations is sufficient to state a constitutional claim. Moreover, there is no indication how the 39 Defendants identified in the Complaint are responsible for the conduct alleged.

2. **Standard of Law**

To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir.

1991). The plaintiff has a duty to set forth facts showing that each defendant participated personally in a constitutional violation or knew of a violation and failed to correct it; there is no respondeat superior theory of liability under § 1983. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). A complaint should also be dismissed under Rule 8 of the Federal Rules of Civil Procedure if the factual allegations are not "plausible," but merely "conceivable." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009).

If Plaintiff wishes to proceed with his Complaint, he will have to file an amended pleading. The Court urges Plaintiff first to consider what he claims he wants to make against what Defendants and on what factual basis.

### a. Format of Amended Complaint

To aid the Court in reviewing Plaintiff's claims and to aid Defendants in responding to any claims upon which Plaintiffs may be authorized to proceed, Plaintiff is directed to file a single, amended complaint containing all of his allegations and claims. The Court will then review the amended complaint and make a determination as to whether Plaintiff may be allowed to proceed on each of his claims.

Plaintiff shall organize his amended complaint in a way that explains what claims are directed toward what Defendants and upon what factual basis. For each claim, Plaintiff shall state the following: (1) the name and job title of the person who personally participated in causing the alleged deprivation of Plaintiff's federal rights; (2) facts showing the person is a state actor; (3) the dates on which the conduct of the Defendant allegedly took place; (4) the specific conduct or action Plaintiff alleges is unconstitutional

or unlawful under a federal statute (in other words, how each Defendant personally participated in the alleged violation); (5) the particular federal law provision under which Plaintiff makes the claim; (6) the injury or damages suffered; and (7) the particular type of relief he is seeking from each Defendant.

In addition, when drafting an amended complaint, Plaintiff should be aware of the following limitations on his ability to make a constitutional claim.

b.  **Retaliation Claims**

To state a retaliation claim, Plaintiff must demonstrate: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). A "chilling effect on First Amendment rights" is enough to state an injury. *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001).

Not every retaliatory action taken by an official can be considered an adverse action that chills the exercise of protected speech. The proper inquiry in determining whether a plaintiff has stated a viable retaliation claim "asks 'whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.'" *Mendocino Envt'l Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999) (quoting *Crawford-El v. Britton*, 93 F.3d 813, 826 (D.C. Cir. 1996)). If it would not, then "the retaliatory act is simply *de minimis* and therefore outside the ambit of

constitutional protection." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (quotation omitted). *See also Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006) (*de minimis* retaliatory actions are those that would not deter a person of ordinary firmness from further exercise of his or her rights); *A.C.L.U. of Maryland, Inc. v. Wicomico County*, 999 F.2d 780786 n.6 (4th Cir. 1993) ("[T]hese § 1983 plaintiffs suffered no more than a *de minimis* inconvenience and . . . , on the facts of this case, such inconvenience does not constitute cognizable retaliation under the First Amendment."). This distinction between *de minimis* and actionable retaliation "achieves the proper balance between the need to recognize valid retaliation claims and the danger of federal courts embroiling themselves in every disciplinary act that occurs in state penal institutions." *Morris*, 449 F.3d at 686 (quotation and alteration omitted).

Similarly, although a threat of harm can generally be an adverse action sufficient to state a retaliation claim, *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009), a mere threat of disciplinary sanctions cannot, so long as the person subject to the threat of sanctions is already exposed to such sanctions based on a rule violation, *Corales v. Bennett*, 567 F.3d 554, 565 (9th Cir. 2009) ("Plaintiffs do not have a retaliation claim based on threats of discipline for First Amendment activity if that threat is itself based upon lawful consequences and is not actually administered."). Therefore, because a DOR is a lawful consequence of violating a prison rule, charging Plaintiff with a DOR when there is some evidence in support of the crime alleged, cannot support a retaliation claim.

### c. Eighth Amendment: Prison Conditions

Although Plaintiff characterizes his allegations as supportive of a retaliation claim, he also appears to be making more general commentary regarding prison conditions at IDOC, ICC, and ICI-O. To the extent Plaintiff intends to make an Eighth Amendment claim, he should be aware of the following rules.

To make an Eighth Amendment claim, Plaintiff must show that Defendants acted with deliberate indifference to his safety. To demonstrate that a defendant acted with deliberate indifference, a plaintiff must show "both (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quotation omitted). Harassment, abuse, and threats that are verbal only are not sufficient to state a constitutional deprivation under Section 1983. *Oltarzewski v. Ruggiero*, 830 F.2d 136 (9th Cir. 1987).

In addition, the courts provide prisons with a great deal of deference when dealing with issues of prison security. The constitutional rights of convicted prisoners are subject to limitations arising "both from the fact of incarceration and from valid penological objectives -- including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). In *Turner v. Safley*, 482 U.S. 78 (1987), the United States Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is

reasonably related to legitimate penological interests." 482 U.S. at 89. The Court identified four factors to consider when determining whether a regulation is valid: (1) whether there is a "rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether "there are alternative means of exercising the right that remain open to prison inmates"; (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether "ready alternatives" exist. 482 U.S. at 89- 90.

## CONCLUSION

Despite the many pages of material offered in support of Plaintiff's Complaint, Plaintiff has failed to demonstrate a constitutional violation. If Plaintiff wishes to proceed with this claim, he must submit an amended complaint within 30 days of this Order.

## ORDER

Consistent with the foregoing, IT IS HEREBY ORDERED:

1. Within 30 days of the date of this Order, Plaintiff may file an amended complaint that conforms with the instructions above. Together with his amended complaint, if any, Plaintiff shall file a "Motion for Review of Amended Complaint." Alternatively, Plaintiff may file a notice of voluntary dismissal.

2. Plaintiff's Application to Proceed In Forma Pauperis (Dkt. 1) is DEEMED MOOT, but the Court will reconsider Plaintiff's Application with any

reasonably related to legitimate penological interests." 482 U.S. at 89. The Court identified four factors to consider when determining whether a regulation is valid: (1) whether there is a "rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether "there are alternative means of exercising the right that remain open to prison inmates"; (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether "ready alternatives" exist. 482 U.S. at 89- 90.

## CONCLUSION

Despite the many pages of material offered in support of Plaintiff's Complaint, Plaintiff has failed to demonstrate a constitutional violation. If Plaintiff wishes to proceed with this claim, he must submit an amended complaint within 30 days of this Order.

## ORDER

Consistent with the foregoing, IT IS HEREBY ORDERED:

1. Within 30 days of the date of this Order, Plaintiff may file an amended complaint that conforms with the instructions above. Together with his amended complaint, if any, Plaintiff shall file a "Motion for Review of Amended Complaint." Alternatively, Plaintiff may file a notice of voluntary dismissal.

2. Plaintiff's Application to Proceed In Forma Pauperis (Dkt. 1) is DEEMED MOOT, but the Court will reconsider Plaintiff's Application with any

amended complaint that he files. Plaintiff is advised that if he is found to be indigent and his case proceeds, he will be required to pay the full $350 filing fee, but it will be deducted automatically from his prison trust account in installments rather than at the time of filing. 28 U.S.C. § 1915(b).

DATED: **May 15, 2011**

Honorable B. Lynn Winmill
Chief U. S. District Judge